Cecilia O. Miller (Bar No. 211111)
Jamie L. Altman (Bar No. 280075)
PROCOPIO, CORY, HARGREAVES &
   SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA  92101
Telephone: 619.238.1900
Facsimile: 619.235.0398
Email: cecilia.miller@procopio.com

Joseph M. Aliberti (Bar No. 168870)
LAW OFFICES OF JOSEPH M. ALIBERTI
4340 Von Karman Ave., Suite 110
Newport Beach, CA  92660
Telephone: 949.724.0550
Facsimile: 949.724.1717
Email: jma@alibertilaw.com

Attorneys for Defendant
Mostafa Abdou

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLUMBIA CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MOSTAFA ABDOU,<br><br>Defendant. | Case No. 3:15-cv-00080 LAB KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO STAY ACTION**<br><br>Date:          September 8, 2015<br>Time:         11:15 a.m.<br>Dept.         14A<br>Judge:        Hon. Larry A. Burns<br><br>Action Filed:      January 15, 2015 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

I.    INTRODUCTION ....................................................................................1

II.   FACTUAL & PROCEDURAL BACKGROUND ...........................................1

      A.   The Insured Procured an Insurance Policy from Columbia Covering Claims of Negligence in the Brokering of Life Insurance ......................1

      B.   Abdou Was Sued in the *Mercola* Action for Alleged Wrongful Acts In the Sale or Servicing of Life Insurance, and Columbia Agreed to Provide a Defense of Abdou Under the Policy ........................................3

      C.   Immediately After Agreeing to Provide a Defense, Columbia Sued Abdou, Seeking to Terminate its Defense Obligation ............................4

      D.   The Underlying *Mercola* Action is in its Infancy ..................................5

III.  ABDOU IS ENTITLED TO A STAY OF THE PRESENT ACTION .............6

      A.   Declaratory Relief Litigation Must Be Stayed Where Coverage Questions Overlap with Unresolved Issues in the Underlying Case .......6

      B.   With No Findings of Fact in the *Mercola* Action, And A Direct Overlap Between Columbia's Coverage Defenses and Abdou's Defenses—A Stay is Required .................................................................8

           1.   Columbia's Attempt to Negate its Duty to Defend, including its Pending Motion for Summary Judgment, are Premature .........9

           2.   Columbia's Litigation of its Defense Obligation Is Also Prejudicial ...................................................................................10

           3.   Coverage Defenses Raised by Columbia Overlap with Critical Unresolved Issues in the *Mercola* Action...................................13

IV.   CONCLUSION .....................................................................................17

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY ACTION
DOCS 123192-000001/2295303.4

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Atain Specialty Ins. Co. v. 20 Parkridge, LLC*,
   No. 15-CV-00212-MEJ, 2015 WL 2226356 (N.D. Cal. May 11,
   2015) ........................................................................................................... 11

*Maryland Cas. Co v. Witherspoon*,
   993 F.Supp.2d 1178 (C.D. Cal. 2014) ....................................................... 6

*Mercola, et al. v. Abdou, et al.*,
   No. 1:14-CV-8170 (N.D. Ill.) ........................................................... passim

**CALIFORNIA CASES**

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*,
   100 Cal. App. 4th 1017 (2002) ................................................................... 9

*CNA Casualty of California v. Seaboard Surety Co.*,
   176 Cal. App. 3d 598 (1986) ........................................................... 2, 3, 9

*David Kleis, Inc. v. Superior Ct.*,
   37 Cal. App. 4th 1035 (1995) ......................................................... 2, 7, 8

*George F. Hillenbrand, Inc. v. Ins. Co. of N. Am*,
   104 Cal. App. 4th 784 (2002) ................................................................... 6

*Gray v. Zurich Ins. Co.*,
   65 Cal. 2d 263 (1963) .................................................................. 2, 3, 7, 9

*Great Am. Ins. Co. v. Superior Court*,
   178 Cal.App.4th 221 (2009) ............................................................ 8, 17

*Haskel, Inc. v. Superior Court*,
   33 Cal. App. 4th 963 (1995) ................................................... 7, 8, 9, 11

*Horace Mann Ins. Co. v. Barbara B.*,
   4 Cal. 4th 1076 (1993) ............................................................................. 2

*Montrose Chem. Corp. v. Superior Court*,
   6 Cal. 4th 287 (1993) ...................................................................... passim

*Scottsdale Ins. Co. v. MV Transp.*,
　36 Cal. 4th 643 (2005) ................................................................... 6, 8, 16

*United Enterprises, Inc. v. Superior Court*,
　183 Cal. App. 4th 1004 (2010) ..................................................... 6, 11, 17

**OTHER STATE STATUTES, REGULATIONS, AND RULES**

Illinois Consumer Fraud and Deceptive Business Practices Act. ............................. 3

## I.      **INTRODUCTION**

Defendant MOSTAFA ABDOU ("Defendant" or "Abdou") respectfully requests an order staying all proceedings in this insurance coverage action until the underlying third party liability action, *Mercola, et al. v. Abdou, et al.*, No. 1:14-CV-8170 (N.D. Ill.) (the "*Mercola* Action"), is resolved.  Under extensive California Supreme Court precedent, a stay of an insurer's declaratory relief litigation is required where adjudication of the coverage issue intersects with disputed issues of fact in the underlying action for which coverage is sought.  *See, e.g., Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 302 (1993).  Accordingly, it is difficult to understand why Abdou's insurer, Plaintiff COLUMBIA CASUALTY COMPANY ("Plaintiff" or "Columbia"), filed the instant litigation and proceeded to immediately seek adjudication of facts at issue in both this coverage action and the underlying *Mercola* Action, *before* Abdou had even filed his Answer in the *Mercola* Action.

Once the *Mercola* Action is finally resolved, and if there is a determination that Abdou suffers liability, only then may Columbia seek judicial determination of its coverage obligations, which obligations are predicated upon findings of fact in the *Mercola* Action.  Until such time, however, because no findings of fact have been made in the *Mercola* Action, all factual allegations remain disputed and unresolved, and a determination of coverage would be advisory, premature, and improper.  A stay is required.

## II.     **FACTUAL & PROCEDURAL BACKGROUND**

### A.      **The Insured Procured an Insurance Policy from Columbia Covering Claims of Negligence in the Brokering of Life Insurance**

To protect himself against third party claims such as the *Mercola* Action, Abdou purchased from Columbia a "Life Agent Professional Liability Insurance Policy," identified as Policy No. 425391280, for the policy period of July 1, 2014 to July 1, 2015 (the "Policy").  (Declaration of Cecilia Miller ("Miller Decl."), filed

concurrently herewith, Ex. "A.")

The Policy obligates Columbia to provide Abdou with coverage against "Claims" alleging "Wrongful Acts," which are defined to include "any negligent act, error, or omission of … caused by the Insureds in rendering or failing to render Professional Services."  (Miller Decl., Ex. A, at ¶ III.)  "Professional Services" in turn is defined to include, in relevant part, "1. the sale, attempted sale or servicing of life insurance [and] 4. financial planning activities in conjunction with services described in paragraph 1 of this definition."  (Miller Decl., Ex. A, at ¶ III.)

The Policy, like most liability policies, provides two separate and independent forms of coverage:  the duty to defend and the duty to indemnify.  *See David Kleis, Inc. v. Superior Ct.*, 37 Cal. App. 4th 1035, 1041 (1995); *CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal. App. 3d 598, 604-05 (1986).  The duty to defend operates as "litigation insurance," which policyholders purchase to obtain a contemporaneous, carrier-funded legal defense against third party claims.  *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) ("*Montrose*").  Since the duty to defend arises at the outset of the underlying case against the insured, when it remains unknown whether the carrier will have to indemnify the insured (because the insured has not yet been found liable, and may suffer no liability in need of indemnification if the defense is successful), the duty to defend exists whenever there is a *potential* for indemnity.  *Id*.; *see also Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993) ("It is by now a familiar principle that a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity.")

In contrast, the duty to indemnify is the carrier's ultimate obligation to pay damages on behalf of the policyholder, if and when the insured suffers a judgment or liability to a third party.  *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 272 (1963).  Because it hinges on the outcome of the third party suit against the policyholder, the duty to indemnify does not arise until the *conclusion* of the underlying suit, when it

is learned whether the policyholder is liable to the third party, and, where liability exists, whether the policyholder is liable for damages covered under the policy. *See id.*; *see also CNA Casualty*, 176 Cal. App. 3d at 598 ("the duty to indemnify … is only determined after liability is finally established").

The Policy obligates Columbia both to defend and to indemnify Abdou. Miller Decl., Ex. "A" at I.A., II.A. ("If a Claim is made against the Insured within the United States of America, its territory or possession or Canada, the Insurer shall have the right and duty to defend such Claim, even if any of the allegations of the claim are groundless, false or fraudulent.").

**B.    Abdou Was Sued in the *Mercola* Action for Alleged Wrongful Acts In the Sale or Servicing of Life Insurance, and Columbia Agreed to Provide a Defense of Abdou Under the Policy**

On October 17, 2014, Dr. Joseph Mercola ("Mercola") named Abdou as a defendant in the underlying *Mercola* Action. Mercola's complaint includes a broad set of allegations in support of three causes of action against Abdou concerning Abdou's conduct as Mercola's life insurance broker: (1) breach of fiduciary duty, (2) fraud, and (3) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. (Miller Decl., Ex. "B.").

Among the allegations, Mercola contends that Abdou induced the plaintiffs to purchase "excessive amounts of life insurance." (*Id.* at ¶ 2.) Mercola further alleges that Abdou made misrepresentations and failed to disclose material information, in an effort to induce the plaintiffs to purchase life insurance. (*Id.* at ¶¶ 2-6.) Mercola separately alleges that he retained Mark Ziebold, an attorney, expressly upon Abdou's recommendation, and that Abdou and Ziebold had a relationship resulting in conflicts of interest, including an allegedly improper commission sharing arrangement. (*Id.* at ¶ 27.) Similarly, the *Mercola* complaint includes allegations that Abdou had an improper relationship with Rebecca Ryan, a Senior Vice President of Northern Trust, who Abdou introduced to Dr. Mercola and with whom Abdou

allegedly made misrepresentations that induced Dr. Mercola to incur debt with Northern Trust. (*Id.* at ¶¶ 38-39.)

Mercola's cause of action for breach of fiduciary duty is predicated upon Abdou's alleged omissions and failures to act, including, but not limited to:

> [F]ailing to provide life insurance quotes from any company other than Minnesota Life; . . . failing to analyze whether any available level of life insurance coverage other than the maximum amount was appropriate for Dr. Mercola; . . . failing to advise Dr. Mercola as to the proper amount of life insurance needed to meet his estate planning, asset protection, business succession and charitable giving goals; . . . failing to disclose the policy costs associated with the Minnesota Life policies that Abdou recommended; . . . failing to monitor the performance of policies and advise Dr. Mercola of the additional collateral that would be required; . . . advising Dr. Mercola to purchase life insurance policies with significantly higher death benefits than were necessary or prudent for Dr. Mercola's needs, in order to increase the commissions payable to Abdou; . . . [and] failing to otherwise properly advise Dr. Mercola.

(*Id.* at ¶ 65.)   As to Mercola's cause of action for fraud, the plaintiffs allege that "Abdou never disclosed to Dr. Mercola his relationship with Ziebold, Ryan and Northern Trust."  (*Id.* at ¶93.)  Accordingly, Mercola asserted claims against Abdou alleging wrongful acts related to Abdou's sale or servicing of life insurance, thereby triggering coverage under the Policy.

In response to Columbia's initial and erroneous denial of coverage, the Insured sought reconsideration.  (Miller Decl., Exs. "C" & "D.")  In response, Columbia properly agreed in writing to provide a defense of Abdou in the *Mercola* Action. (Miller Decl., Ex. "D.")

## C.   <u>Immediately After Agreeing to Provide a Defense, Columbia Sued Abdou, Seeking to Terminate its Defense Obligation</u>

On January 15, 2015, a little over a month after agreeing to defend Abdou in the *Mercola* Action, Columbia filed the present action.  (Miller Decl., Ex. "E.")

On June 23, 2015, before this Court had ruled on a pending motion to dismiss and before Abdou had even answered the *Mercola* Complaint, Columbia filed a Motion for Summary Judgment seeking an immediate declaration from this Court

that it has no obligation to defend or indemnify Abdou in the *Mercola* Action. (Miller Decl., Ex. "F.")

Abdou sought a stay of this action, or alternatively a continuance of Columbia's Motion for Summary Judgment (and Abdou's opposition briefing to same) by *Ex Parte* Application to avoid prejudice to Abdou in the pending *Mercola* Action. [ECF Docket No. 27.] On July 10, 2015, the Court denied Abdou's request to continue the Motion for Summary Judgment and the briefing schedule. [ECF Docket No. 29.] In its July 10 Order, the Court advised as follows:

> Abdou may file a noticed motion to stay this action, but there is no reason to delay briefing on the summary judgment motion until he does. Assuming Abdou files a noticed motion by July 27, 2015, the Court will receive briefing on it before issuing any ruling granting or denying summary judgment.

On July 13, 2015, Abdou filed his opposition to Columbia's Motion for Summary Judgment. [ECF Docket No. 30]. On July 23, 2015, the Court took the July 27 hearing on Columbia's Motion for Summary Judgment off calendar and took the matter under submission. [ECF Docket No. 36.] Abdou respectfully requests that the Court consider the briefing in support of this Motion to Stay prior to deciding Columbia's Motion for Summary Judgment.

## D.    The Underlying *Mercola* Action is in its Infancy

Columbia's lawsuit and Motion for Summary Judgment sought to terminate its defense obligation before pleadings had even closed in the *Mercola* Action, and long before the fact and nature of Abdou's liability (for which indemnity may be needed) can be determined. (Miller Decl., Ex. "H," ¶ 11.) Indeed, just two days *after* Columbia filed its Motion for Summary Judgment in this action, Abdou filed his Answer in the *Mercola* Action. (Miller Decl., Ex. "H.") Abdou strenuously disputes each of the allegations asserted against him by Mercola and will be asserting an aggressive defense to same. (Miller Decl., Ex. "H.")

There has been no substantive motion practice in the *Mercola* Action. (Miller

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY ACTION
DOCS 123192-000001/2295303.4

Decl., Ex. "G," ¶ 9.)  The scope and substance of Mercola's claims against Abdou remain undefined and limited to the allegations, as written discovery only just commenced.  (*Id.*)  The parties have not taken a single deposition in the *Mercola* Action.  (*Id.*)  Nor has any trial date been scheduled in the *Mercola* Action.  (*Id.* at ¶ 10.)  As outlined in the May 7, 2015 Minute Order issued by the Court in the *Mercola* Action, there is a dispositive motion deadline of February 26, 2016.  (*Id.*)  Thus, a trial could be scheduled as early as March of 2016.  (*Id.*)

To date there have no findings of fact or determinations with respect to the allegations of the *Mercola* Complaint.  (Miller Decl., Exs. "G" & "H.")

III.    **ABDOU IS ENTITLED TO A STAY OF THE PRESENT ACTION**

A.    **Declaratory Relief Litigation Must Be Stayed Where Coverage Questions Overlap with Unresolved Issues in the Underlying Case**

When, as here, a declaratory relief coverage action implicates facts still at issue in the underlying third party action, courts stay the entire declaratory relief action until resolution of the underlying action to avoid premature and prejudicial coverage litigation.  *See Montrose*, 6 Cal. 4th at 303; *United Enterprises, Inc. v. Superior Court*, 183 Cal. App. 4th 1004, 1012-13 (2010).   In *Montrose*, the California Supreme Court announced the following rule:

> To eliminate the risk of inconsistent factual determinations that could prejudice the insured, a stay of the declaratory relief action pending resolution of the third party suit is appropriate when the coverage question turns on facts to be litigated in the underlying action.

*Montrose*, 6 Cal. 4th at 301.

Thus, *Montrose* and its progeny require a stay of the entire declaratory relief action where the coverage determination depends on resolution of facts and issues in the underlying action.   *Id.*; *see also Maryland Cas. Co v. Witherspoon*, 993 F.Supp.2d 1178, 1183 (C.D. Cal. 2014); *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 662 (2005); *United Enterprises, Inc.*, 183 Cal. App. 4th at 1012-13; *George F. Hillenbrand, Inc. v. Ins. Co. of N. Am*, 104 Cal. App. 4th 784, 803-804 (2002);

*David Kleis, Inc.,* 37 Cal. App. 4th at 1044-45; *Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 979 (1995). *Montrose* and its progeny confirm that there are two basic reasons why a stay of coverage litigation is required pending the outcome of the underlying liability action: prematurity and prejudice.

With respect to prematurity, the Supreme Court of California announced decades ago in *Gray* that declaratory relief regarding coverage when the underlying case is still pending is premature because it cannot be known until conclusion of the underlying action whether the insured requires indemnity for liability (because there may be no liability), or whether the damages for which the insured is liable are within coverage. *Gray v. Zurich Ins. Co.*, 65 Cal. 2d at 272 ("The carrier's obligation to indemnify inevitably will not be defined until the adjudication of the very action which it should have defended"). Because an insurer's duty to defend is assessed based on the *potential* for indemnity, and the insurer's indemnity obligations cannot be known until the conclusion of the litigation, adjudicating the duty to defend prior to the resolution of the underlying litigation is purely speculative.

With respect to prejudice, California courts have recognized at least three distinct forms of prejudice to the insured arising from concurrent adjudication of facts related to both disputed issues of coverage and disputed liability in the underlying litigation:

> *First,* the insurer who is supposed to be on the side of the insured and with whom there is a special relationship, effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit; *second,* such a circumstance requires the insured to fight a two-front war, litigating not only with the underlying claimant, but also expending precious resources fighting an insurer over coverage questions—this effectively undercuts one of the primary reasons for purchasing liability insurance; and *third,* there is a real risk that, if the declaratory relief action proceeds to judgment before the underlying action is resolved, the insured could be collaterally estopped to contest issues in the latter by the results in the former.

*Haskel, Inc.*, 33 Cal. App. 4th at 979.

To avoid such prejudice, California courts instruct that "[i]f the factual issues to be resolved in [a] declaratory relief action overlap with issues to be resolved in the underlying litigation, the trial court *must* stay the declaratory relief action." *Great Am. Ins. Co. v. Superior Court*, 178 Cal.App.4th 221, 235 (2009) (emphasis in original). California courts unequivocally support *Montrose* stays for the following important policy reasons:

> When an insured calls upon a liability insurer to defend a third party action, the insurer as a general rule may not escape the burden of defense by obtaining a declaratory judgment that it has no duty to defend. Were the rule otherwise, the insured would be forced to defend simultaneously against both the insurer's declaratory relief action and the third party's liability action. Because the duty to defend turns on the potential for coverage, and because coverage frequently turns on factual issues to be litigated in the third party action, litigating the duty to defend in the declaratory relief action may prejudice the insured in the liability action. To prevent this form of prejudice, the insurer's action for declaratory relief may be either stayed or dismissed.

*Scottsdale Ins. Co. v. MV Transp.*, 36 Cal.4th 643, 661-62 (2005) (internal citations omitted) (*citing Montrose*, 6 Cal. 4th 287, 305 (1993).)

The exceptions to the stay requirement are narrow and limited: An insurer can obtain resolution of its claim that coverage does not exist *only* where there is no potential overlap between the coverage dispute and the underlying action. *Haskel, Inc.*, 33 Cal. App. 4th at 978. To proceed, the coverage question must turn on undisputed facts or facts unrelated to the issues in the underlying action. *Scottsdale Ins. Co.*, 36 Cal.4th at 661-62. Thus, when the facts implicated by a carrier's coverage defenses overlap with issues in the underlying case, or when the record is simply insufficient to conclude whether or not such an overlap exists, the court must stay the coverage proceedings. *David Kleis, Inc.*, 37 Cal. App. 4th at 1051.

**B.     With No Findings of Fact in the *Mercola* Action, And A Direct Overlap Between Columbia's Coverage Defenses and Abdou's Defenses—A Stay is Required**

Applying the above principles, Columbia's declaratory relief action, and its

Motion for Summary Judgment in particular, are both premature and prejudicial to Abdou, and the exception to the stay rule for actions where there is no overlap of issues in dispute plainly does not apply.

### 1.     Columbia's Attempt to Negate its Duty to Defend, including its Pending Motion for Summary Judgment, are Premature

An insurer's duty to defend is predicated upon a mere *potential* or *possibility* of indemnity coverage. *Gray v. Zurich Ins. Co.*, 65 Cal. 2d at 272. To extinguish an insurer's duty to defend prior to the end of the third party action, the insurer must "produce in court undisputed extrinsic evidence which conclusively establishes that there is no potential for coverage." *Haskel, Inc.*, 33 Cal. App. 4th at 978. Once the duty to defend arises, the only way an insurer can terminate the defense obligation is to demonstrate, by undisputed evidence that is unrelated to the facts at issue in the underlying case, that there is no potential for indemnity. *Montrose*, 6 Cal. 4th at 295, 300 ("insurer must provide coverage unless there is 'no conceivable theory' in the underlying complaint that raises even 'a single issue which could bring it within the policy coverage'"); *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1039 (2002) ("Thus, an insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds"); *CNA Casualty of California*, 176 Cal. App. 3d at 613 (refusing to negate an insurer's defense obligation "where the application of an exclusion was only a possibility").

As demonstrated in Abdou's Opposition to Columbia's Motion for Summary Judgment and Abdou's Objections to the evidence submitted by Columbia in support of that Motion [ECF Docket Nos. 30 & 34], Columbia has been unable to conclusively negate any *potential* for coverage. At this juncture of the underlying *Mercola* Action, where the scope of the third party plaintiff's allegations are undefined, it is impossible to demonstrate, as a matter of undisputed fact or law, that there are no allegations in the *Mercola* Action that raise a potential for coverage.

Any such finding would be entirely speculative as the pleadings in the *Mercola* Action only closed in the last month and written discovery on the scope and substance of Mercola's allegations against Abdou just commenced. (Miller Decl., ¶¶ 9-11)  The parties have not yet taken a single deposition in the *Mercola* Action. (*Id.*, ¶ 9)

If this Court were to grant Columbia's pending Motion for Summary Judgment, that decision necessarily would rely upon findings of fact that have not yet been made in the *Mercola* Action, rendering this Court's decision advisory at best.  For example, if this Court determines that the Policy's exclusion for premium-financed life insurance conclusively negates any potential for coverage and "applies in all possible worlds" (the applicable standard), then this Court necessarily has determined that the conduct at issue in the *Mercola* Action relates exclusively to premium-financed life insurance products.  But what is the result if this Court makes that finding, and the court presiding over the *Mercola* trial (not anticipated to occur until March 2016 at the earliest) makes a contrary determination?  The result is that Abdou is left *without* an insurer-funded defense when that defense is most needed and, indeed, owed.  As discussed, *infra*, another result is that Abdou even could be collaterally estopped from disputing that there is other conduct at issue in the *Mercola* Action because this Court has pre-determined the issue of the scope of the life insurance products and conduct at issue in that third party litigation.  Columbia's litigation of these disputed issues of coverage now is entirely premature and a stay is required.

### 2.   Columbia's Litigation of its Defense Obligation Is Also Prejudicial

Each of the three forms of prejudice recognized by multiple courts as arising from the concurrent litigation of disputed issues of coverage and the third party action are present here.  *First,* Columbia's arguments in its Motion for Summary Judgment align with the third party plaintiff's view of the facts and circumstances of

the transactions at issue in the *Mercola* Action.   *Compare* Miller Decl., Ex. "F" at 11:17-20 [Columbia Motion for Summary Judgment] ("The 'premiums paid for the life insurance would accumulate value in the policies' and the accumulated value 'would earn returns that would both cover the loan interest and eventually repay the loan principal.'") *with* Ex. "B," at ¶ 23 [Mercola Complaint] ("Abdou also represented that the premium paid for the life insurance would accumulate value in the policies, and that such accumulated value in the policies could be invested in the stock market or in a fixed yield account.   Abdou further represented that the accumulated value would earn return that would both cover the loan interest and eventually repay the loan principal").

By seeking to prove Abdou's wrongdoing through the filing of this action before Abdou had even answered the underlying *Mercola* complaint, Columbia has undermined (rather than assisted) Abdou's defense. *Haskel, Inc.*, 33 Cal. App. 4th at 979 ("[T]he insurer, who is supposed to be on the side of the insured and with whom there is a special relationship, effectively attacks its insured and thus gives aid and comfort to the claimant in the underlying suit.").

Indeed, in opposing Columbia's Motion for Summary Judgment, Abdou was careful to raise only those arguments that would not cause prejudice to his ongoing defense of the *Mercola* Action.   Abdou was constrained to raise the full panoply of arguments *establishing* coverage under the Policy by demonstrating the alleged "wrongful acts" (such as negligence, errors, omissions breaches of duty) arising from Abdou's "professional services" (including the sale and service of life insurance) to Mercola. *United Enterprises, Inc.*, 183 Cal. App. 4th at 1012-13 (granting stay by concluding insurer was "putting the insured in a position where they will have to try to prove some of the things they are actually trying to defend themselves from"); *Atain Specialty Ins. Co. v. 20 Parkridge, LLC*, No. 15-CV-00212-MEJ, 2015 WL 2226356, at *8 (N.D. Cal. May 11, 2015) ("This puts Defendants in an untenable position in relationship to the Underlying Action as it forces them to stake out

positions and support those positions with evidence that risks impacting them negatively in the Underlying Action.   Given the substantial potential overlap between the two cases and their necessary factual determinations related to the [exclusion], the Court cannot find that determination of this exclusion would not impact the Underlying Action.").  Abdou continues to dispute the existence of any "wrongful acts" and the scope of the "professional services" allegedly owed to Mercola.  (Miller Decl., Ex. "H.")

*Second*, Columbia's initiation of this litigation has forced Abdou to incur additional fees and costs as he must litigate coverage issues at the same time as his ongoing defense of the *Mercola* Action.  Simply stated, an insured buys coverage to *obtain* a legal defense when sued by a third party, *not* to become embroiled in a second simultaneous litigation filed by its own insurer.

*Third,* adjudication of the coverage issues raises a significant risk of collateral estoppel should the facts impacting the coverage inquiry be adjudicated before the underlying *Mercola* Action is resolved.  For example, Columbia's present Motion for Summary Judgment contends that the *entirety* of the allegations in the *Mercola* Action exclusively concern premium-financed life insurance.  If Columbia prevailed on that argument in *this* action, Abdou could be estopped from disputing the allegations in the underlying *Mercola* Action concerning Abdou's alleged omission to present any life insurance options *other than* premium financed options.  (Miller Decl., Ex. "B," ¶ 65.)  But, Abdou intends to vigorously dispute Mercola's allegation that he did not present other alternatives.  (Miller Decl., Ex. "H," ¶ 65.)  Thus, a fact bearing on the existence of coverage is disputed in the underlying action—and pre-litigating that fact in this litigation could gravely prejudice the insured's defense of the underlying *Mercola* Action.  As a result, the policyholder becomes a victim of an adverse and premature liability determination obtained at its insurer's behest.

### 3.    Coverage Defenses Raised by Columbia Overlap with Critical Unresolved Issues in the *Mercola* Action

An insurer *may* proceed to litigate coverage during the pendency of the underlying case *only* when the insurer demonstrates that there is *no* overlap between the coverage defenses it asserts and the issues yet to be litigated in the underlying case. *Montrose*, 6 Cal. 4th at 302. Here, by contrast, the coverage defenses asserted by Columbia (both via its Motion for Summary Judgment and its reservation of rights) directly intersect with critical, disputed facts that strike at the core of Abdou's defense of the pending *Mercola* Action.

For example, Columbia's coverage defenses encompass the following issues and facts:

1. Do the "Claims" alleged in the *Mercola* Action "arise" out of the "sale or servicing of" a "life insurance policy in which the premium was paid for, in whole or in part, by or through any premium finance mechanism or any premium finance company," such that the exclusion for premium financed life insurance applies?  Further, is any "Loss" suffered by Abdou "in connection with" such a "Claim"? (Miller Decl., Ex. "A," Ex. "E," & Ex. "F" (asserting application of premium financed exclusion).)

2. Do the "Claims" alleged in the *Mercola* Action "arise" out of Abdou making "any promises or guarantees as to interest rates or fluctuations in interest rates, the market value of any investment or insurance product, or future premium payments," such that the exclusion for premium payment guarantees applies?  Further, is any "Loss" suffered by Abdou "in connection with" such a "Claim"? (Miller Decl., Ex. "E," & Ex. "F" (asserting application of premium guarantee exclusion).)

3. Did Abdou have the "appropriate license" in Mercola's resident state or jurisdiction, and in the state or jurisdiction in which the business was conducted, such that the predicate for "Professional Services" under the

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY ACTION
DOCS 123192-000001/2295303.4

Policy is met?  (Miller Decl., Ex. "C" (Columbia's Denial of Coverage), at pp.6-7).

4. Were Abdou's acts "intentionally deceptive and fraudulent" and thus not within the Policy's definition of "Wrongful Act"?  (Miller Decl., Ex. "C" (Columbia's Denial of Coverage), at p.7).

5. Is Mercola disputing a "fee" or "commission" charged by Abdou such that the exclusion for disputes concerning fees or commission applies?  (Miller Decl., Ex. "D" (Columbia's Denial of Coverage), at p.7).

The issues raised by these coverage defenses overlap with—and indeed mirror—the disputed issues in the *Mercola* Action, which include:

1. Were all of Mercola's damages caused by Abdou's sale or servicing of a premium-financed life insurance product or did Mercola incur loss arising from other conduct by Abdou, or other life insurance or financial products? Did Abdou provide advice regarding other products?  If so, what is the extent of that conduct or the role of other life insurance products as to Mercola's damages?  Do Mercola's breach of duty claims, i.e. that Abdou failed to disclose an improper relationship or recommend particular counsel, have a causal relationship to the "sale" or "servicing" of a premium-financed life insurance product?  Did a discussion regarding purchasing other life insurance products precede discussion or the sale of premium-financed life insurance?  *Compare* Miller Decl., Ex. "B," ¶ 1 ("This action arises from a complex insurance sales scheme known in the industry as 'premium financed-life insurance.'") *with* Ex. "H," ¶ 1 (denying that the action arises from premium-financed life insurance); *compare* Miller Decl., Ex. "B," ¶ 25 ("At no time did Abdou discuss other insurance options for Dr. Mercola.  Moreover, Abdou presented no other financial products or potential solutions, and Abdou presented no policy value options other than securing the maximum dollar amount Minnesota Life

14

Case No. 3:15-cv-00080 LAB KSC

would underwrite.") *with* Ex. "H," ¶ 25 (denying allegations that Abdou presented no other options); *compare* Miller Decl., Ex. "B", ¶ 65 (a) (Abdou … breached his fiduciary duties by: (a) failing to advise Dr. Mercola of life insurance alternatives other than premium financed life insurance.") *with* Ex. "H," ¶ 65 (a) (denying allegation that Abdou did not provide advice as to other life insurance options).

2. Did Abdou make a "promise" or a "guarantee" as to "interest rates" or "future premium payments"?  Are all of Mercola's damages caused by Abdou's "promise" or "guarantee" regarding "interest rates" or "future premium payments," or did Mercola incur loss arising from other conduct by Abdou or other life insurance or financial products?  If so, what is the extent of that conduct or the role of other conduct by Abdou as to Mercola's damages?  Are Mercola's claims that Abdou failed to disclose an improper relationship or recommend particular counsel caused by or "arise" from a "promise" or "guarantee" by Abdou regarding "interest rates" or "future premium payments"?  *Compare* Miller Decl., Ex. "B," ¶ 23 ("Abdou further represented that the accumulated values would earn returns that would both cover the loan interest and eventually repay the loan principal.") *with* Ex. "H," ¶ 32 (denying representations regarding returns); *compare* Miller Decl., Ex. "B," ¶ 31(a) (Abdou presented policy illustrations that "failed to accurately reflect the rate of return generated by the policies") *with* Ex. "H," ¶ 31(a) (denying presentation of rate of return illustrations).

3. Did Abdou conduct business with Mercola both by phone and a meeting in Mercola's office in Illinois?  What is Mercola's "resident state"?  Did Abdou have the "appropriate license" in Mercola's resident state or jurisdiction and the state or jurisdiction in which the business was conducted?  *Compare* Miller Decl., Ex. "B," ¶ 8 (alleging Mercola is a

citizen of Illinois); ¶¶ 19-23 (alleging Mercola and Abdou spoke by phone and met in Mercola's office) *with* Ex. "H," ¶¶ 1, 19-23 (denying allegations of Mercola's citizenship, admitting phone calls but no location for such calls, denying meetings at Dr. Mercola's office).

4. Is Abdou liable for fraud? *Compare* Miller Decl., Ex. "B," ¶¶ 85-99 (cause of action for fraud) *with* Ex. "H," ¶¶ 85-99 (denying allegations of fraud).

5. Did Abdou charge a "fee" or "commission" and is Mercola disputing such "fee" or "commission"?  *Compare* Miller Decl., Ex. "B," ¶ 5 ("By inducing Plaintiff to enter into the premium financed life insurance arrangement, Defendants made substantial sums of money from brokerage commissions and attorney's fees") *with* Ex. "H," ¶ 5 (denying allegations); *compare* Miller Decl., Ex. "B," ¶ 89 ("Furthermore, there was no reason for the exorbitant amount of life insurance Abdou recommended, other than that it was the maximum amount of coverage that Minnesota Life would offer Dr. Mercola, it had the highest possible premium, and thus, it maximized the commissions that Abdou would receive") *with* Ex. "H," ¶ 89 (denying allegations).

These issues, among others, will be actively litigated in the coming months in the *Mercola* Action.  (Miller Decl., Exs. "G" & "H.")

As demonstrated in Abdou's Opposition to Columbia's Motion for Summary Judgment and Abdou's Objections to the evidence submitted by Columbia, Columbia's coverage defenses do not turn on *undisputed* facts, "purely" legal issues, or facts *unrelated* to the issues in the underlying *Mercola* Action.  Thus Columbia cannot satisfy the limited exception to the mandatory stay requirement.  *Scottsdale Ins. Co.*, 36 Cal.4th at 661-62.

Instead, Columbia's duty to defend and the application of the exclusions relied upon by Columbia in seeking to negate that duty are entirely dependent on disputed issues regarding, among other facts, Abdou's brokering conduct, brokering advice

and the substance of that advice—issues that are yet to be established in the *Mercola* Action. Where, as here, the coverage determination depends on overlapping facts still at issue in the underlying third party lawsuit, the court's power to stay the action is not discretionary—rather it is mandatory. *United Enterprises, Inc.* 183 Cal. App. 4th at 1012-13 ("[T]he court was required to stay the declaratory relief action once it found overlapping issues"); *Great Am. Ins. Co.*, 178 Cal.App.4th at 235 ("[i]f the factual issues to be resolved in the declaratory relief action overlap with issues to be resolved in the underlying litigation, the trial court *must* stay the declaratory relief action.") (emphasis in original). Accordingly, Abdou is entitled to a stay of Columbia's action until the *Mercola* Action is resolved.

## IV.  **CONCLUSION**

Columbia's declaratory relief action seeks to disavow its defense obligation in the underlying *Mercola* Action before resolution of any facts or legal issues in that case. Columbia's assertion at this juncture that none of the claims in the *Mercola* Action could be *potentially* covered by the Policy is entirely premature, and litigation of that contention will significantly prejudice Abdou's ongoing defense in that litigation. California law is unequivocal in its direction that a stay of an insurer's declaratory relief litigation is required when the coverage issues intersect with issues in dispute in the underlying action. On that basis, Abdou requests that the Court stay this action until resolution of the *Mercola* Action.

DATED: July 27, 2015

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP


By:  *s/ Cecilia O. Miller*
Cecilia O. Miller (Bar No. 211111)
Jamie L. Altman (Bar No. 280075)
Attorneys for Defendant
Mostafa Abdou