1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| COLUMBIA CASUALTY COMPANY, | CASE NO. 15cv80-LAB (KSC) |
|---|---|
| Plaintiff, | **ORDER DENYING MOTION TO STAY (DOCKET NO. 37), DENYING MOTION TO DISMISS (DOCKET NO. 11), AND GRANTING MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 24)** |
| vs. | |
| MOSTAFA ABDOU, | |
| Defendant. | |

Columbia Casualty Company sued Mostafa Abdou seeking a declaratory judgment as to its responsibilities under a professional liability insurance policy it issued. It contends that the policy doesn't cover a lawsuit brought against Abdou by one of his clients—Joseph Mercola. Abdou has moved to dismiss (Docket no. 11) and to stay this case while Mercola's lawsuit is resolved. (Docket no. 37.) Columbia has moved for summary judgment. (Docket no. 24.)

## I.    Factual Background

Columbia alleges that it issued an insurance policy with "premium finance" and "premium payment guaranty" exclusions. (Docket no. 11 at ¶ 10.) Under the premium finance exclusion, Columbia

> shall not be liable to pay any Loss in connection with any Claim . . . based upon, directly or indirectly arising out of, or in any way involving the actual alleged sale, attempted sale or servicing of any . . . life insurance policy in which the premium was paid for, in whole or in part, by or through any premium finance mechanism or any premium finance company.

1   (*Id.* at ¶ 11.)  And under the premium payment guaranty exclusion, it

2       shall not be liable to pay any Loss in connection with any Claim . . . based
3       upon, directly or indirectly arising out of, or in any way involving the . . . making
        or stating of any promises or guarantees as to interest rates or fluctuations in
        interest rates, the market value of any investment or insurance product, or
4       future premium payments.

5   (*Id.* at ¶ 12 (internal brackets omitted).)

6       Mercola sued Abdou in the Northern District of Illinois, alleging that he lost more than

7   $3,000,000 as a result of a premium financed life insurance agreement that Abdou brokered

8   on his behalf, and that Abdou made misrepresentations regarding future premium payments.

9   (*Id.* at ¶ 7; Docket no. 11-2 at ¶¶ 1, 7, 31, 32, 33.)  Abdou sought coverage from Columbia

10  for Mercola's lawsuit.  (Docket no. 1 at ¶ 1; Docket no. 11 at 2–5.)  Columbia disagrees that

11  the insurance policy covers Mercola's lawsuit, but is providing a defense for Abdou in the

12  underlying action subject to a reservation of rights.  (Docket no. 1 at ¶ 13.)

13      **II.      Motion to Stay**

14      In deciding whether to grant Abdou's motion to stay, the Court considers: (1) whether,

15  through the arguments raised in its declaratory relief action, Columbia "joins forces with the

16  plaintiff[ ] in the underlying action"; (2) whether Abdou is compelled to fight a two-front war;

17  and (3) whether Abdou may be collaterally estopped from litigating factual findings in the

18  third party action.  *Great Am. Ins. Co. v. Superior Court*, 178 Cal. App. 4th 221, 236–37

19  (2009) (internal brackets omitted).  A stay is required in the first and third case, but otherwise

20  left to the discretion of the court.  *United Enterprises, Inc. v. Superior Court*, 183 Cal. App.

21  4th 1004, 1012 (2010).  In exercising its discretion, "the trial court should consider the

22  possibility of prejudice to *both* parties."  *Great Am.*, 178 Cal. App. 4th at 236.

23      Columbia's declaratory relief action doesn't concern whether Abdou actually did the

24  things Mercola alleges.  Instead it concerns the distinct question of whether Mercola's claims

25  against Abdou fall under exclusions in the insurance policy.  This question is "logically

26  unrelated to the issues of consequence in the underlying case." *United Enterprises*, 183 Cal.

27  App. 4th at 1012.  The Court can resolve it without reaching the merits of Mercola's

28  allegations by simply interpreting the policy's terms and examining the claims Mercola makes

1  in his lawsuit.  *See Progressive Cas. Ins. Co. v. Dalton*, 2012 WL 6088313, at \*12 (E.D. Cal.

2  Dec. 6, 2012).  Thus, Columbia doesn't join forces with Mercola by bringing its declaratory

3  relief action, and collateral estoppel concerns aren't implicated.  Since the pending motions

4  are fully briefed and dispositive of this case, the Court sees no reason to refrain from

5  considering them now.  *Cf. Samsung Fire & Marine Ins. Co. v. AFR Apparel Int'l, Inc*., 2015

6  WL 5005773, at \*4 (C.D. Cal. Aug. 21, 2015) (denying motion to stay where the insurer

7  represented it could demonstrate a complete absence of coverage under an exclusion in the

8  insurance policy through an early motion for summary judgment).

9       Abdou's motion to say (Docket no. 37) is **DENIED**.

10      **III.    Motion to Dismiss**

11      A 12(b)(6) motion to dismiss for failure to state a claim challenges the legal sufficiency

12  of a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  The Court must accept

13  all factual allegations as true and construe them in the light most favorable to Columbia.

14  *Cedars Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir.

15  2007).  To defeat Abdou's motion to dismiss, Columbia's factual allegations need not be

16  detailed, but they must be sufficient to "raise a right to relief above the speculative level. . . ."

17  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "[s]ome threshold of

18  plausibility must be crossed at the outset" before a case can go forward.  *Id.* at 558

19  (quotation omitted).  "The plausibility standard is not akin to a 'probability requirement,' but

20  it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v.

21  Iqbal*, 556 U.S. 662, 678 (2009).

22      Abdou argues that Columbia's case should be dismissed because: (1) Columbia

23  doesn't allege that it provided him with a copy of the policy, so it hasn't alleged that the

24  exclusions were sufficiently conspicuous; (2) while the exceptions weren't included in earlier

25  policies, Columbia didn't provide conspicuous notice of the changes; and (3) Columbia must

26  defend Mercola's claim because it's "potentially covered."  (Docket no. 11.)

27      Abdou's first argument—that Columbia was required to allege that it provided him with

28  a copy of the insurance policy to state a claim for declaratory relief—is without merit.

1  Columbia's allegations, including its allegation that Abdou has sought coverage under the
2  same insurance policy, plausibly suggest that Abdou had a copy of the policy.

3      Additionally, courts generally do not look outside the pleadings in deciding a motion
4  to dismiss.  *See United States v. LSL Biotechs*., 379 F.3d 672, 699 (9th Cir. 2004).  Thus,
5  the Court would deny Abdou's motion to dismiss even if he had provided admissible
6  evidence that he didn't received a copy of the policy.  The same is true for Abdou's second
7  argument—that the exceptions were added through inconspicuous changes in the
8  policy—because Abdou interjects alleged facts that were not contained in the complaint.

9      In California, an insurer has a "broad duty to defend its insured against claims that
10 create a potential for indemnity."  *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287,
11 295 (1993) (internal quotation marks omitted).  Abdou's third argument is that this standard
12 mandates dismissal.  But he ignores the central point behind Columbia's lawsuit—that the
13 premium finance and premium payment guaranty exclusions negate any potential for
14 indemnity.  Columbia plausibly alleges that there's no possibility of coverage under the
15 insurance policy.

16     Abdou's motion to dismiss (Docket no. 11) is **DENIED**.

17     **IV.     Motion for Summary Judgment**

18     Summary judgment is appropriate where the evidence shows "there is no genuine
19 dispute as to any material fact and the movant is entitled to judgment as a matter of law."
20 Fed. R. Civ. P. 56(a).  All reasonable inferences from the evidence are drawn in favor of the
21 nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 242 (1986).  If the
22 moving party meets its burden, the burden shifts to the nonmoving party opposing the
23 motion, who must "set forth specific facts showing that there is a genuine issue for trial."
24 *Anderson*, 477 U.S. at 256.  A genuine issue of fact exists if "the evidence is such that a
25 reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248.  A fact is material
26 if it "might affect the outcome of the suit under the governing law."  *Id*.

27     Columbia contends that summary judgment is warranted by the plain language of the
28 premium finance and premium payment guaranty exclusions.  (Docket no 24.)  Abdou

argues that summary judgment shouldn't be granted because: (1) issues of fact remain regarding whether all of Mercola's claims fall under the exclusions, especially under the broad potential for coverage standard, (Docket no. 30 at 8–12, 13–15, 18–19); (2) Mercola's lawsuit is still ongoing, so his allegations may be revised, withdrawn, or supplemented, (*id.* at 12–13); (3) he disputes Mercola's allegations, including the allegation that he didn't present Mercola with other life insurance options, (*id.* at 15–18); (4) issues of fact remain regarding whether he ever received a copy of the insurance policy before he sought coverage for Mercola's lawsuit, (*id.* at 19–22); and (5) discovery is necessary to determine whether the exclusions apply to Mercola's claims. (*Id.* at 2.)

### A.    All of Mercola's Claims Fall Under the Policy's Exclusions

As Abdou acknowledges, whether there is a potential for coverage is determined by a comparison between the allegations in the underlying complaint and the terms of the insurance policy. (*Id.* at 8 (citing *Pension Trust Fund for Operating Engineers v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002)).)  The insurance policy excludes from coverage claims that are "*based upon, directly or indirectly arising out of, or in any way involving*": (1) a life insurance policy that is paid for through a premium finance mechanism; or (2) representations made about future premium payments. (*See* Docket no. 37-3 at ¶ XIX (emphasis added).)  The phrase "arising out of" "broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." *Aloha Pac., Inc. v. California Ins. Guarantee Ass'n*, 78 Cal. App. 4th 740, 318–19 (2000) (internal quotation marks omitted).  Likewise, the phrase "in any way involving" is "language that would only be included to maximally expand the enumerated categories of acts" that are excluded from coverage. *Nat'l Bank of California v. Progressive Cas. Ins. Co.*, 938 F. Supp. 2d 919, 931 (C.D. Cal. 2013).  Thus, in conducting its comparison, the Court must conclude that Mercola's claims are excluded from coverage if they include even a minimal or incidental relationship to premium financed life insurance sold by Abdou or a premium payment guaranty made by Abdou.  A review of Mercola's complaint reveals that this is unquestionably the case. (*See* Docket no. 30-2.) Even in the paragraphs

1   where premium finance or a premium payment guaranty isn't specifically mentioned, the

2   allegations arise out of Abdou's sale of premium financed life insurance to Mercola. (*See,*

3   *e.g., id.* at ¶¶ 3, 25, 27, 63 (discussing the life insurance that Mercola allegedly purchased

4   from Abdou—i.e. premium financed life insurance, *see id.* at ¶ 1, without specifically calling

5   it premium financed life insurance).)

6         Abdou argues that "[a]n *honest* review of the *Mercola* complaint confirms that Mercola

7   potentially seeks relief that is not exclusively tied to premium-financed life insurance or to

8   guarantees of rates of return." (Docket no. 30 at 18 (emphasis original).) After reviewing

9   Mercola's complaint, the Court finds this argument disingenuous. Additionally, since

10  Abdou's counsel has *admitted* in the underlying case that "[e]ach cause of action asserted

11  against Abdou *arises from the purchase of four premium financed life insurance*

12  *policies . . .* ," the Court finds the contrary argument quite brazen. *See Mercola et al. v.*

13  *Abdou et al.*, Case no. 1:14-cv-8170, Docket no. 25 at 2 (N.D. Ill. Dec. 17, 2014) (emphasis

14  added); *cf. O'Connor v. Trans Union, LLC*, 2008 WL 4910670, at *3 (E.D. Mich. Nov. 13,

15  2008) (finding statements in pleadings binding because "statements of an attorney that are

16  directly related to the litigation at hand have been held to be within the attorney's scope of

17  authority and binding on the client.").

18         **B.**    **Possibility of Amendment Doesn't Prevent Summary Judgment**

19        Abdou asserts that issues of fact remain because the "allegations from the underlying

20  *Mercola* Action . . . remain allegations that necessarily will be revised, withdrawn, and

21  supplemented as discovery in the *Mercola* Action only *now* proceeds." (Docket no. 30 at

22  12.) But "[a]n insured may not trigger the duty to defend by speculating about extraneous

23  'facts' regarding potential liability or ways in which the third party claimant might amend its

24  complaint at some future date." *Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114

25  (1995). Instead "the duty to defend depends upon facts known to the insurer at the inception

26  of the suit." *Id.* (internal quotation marks omitted). "A corollary to this rule is that the insured

27  may not speculate about unpled third party claims to manufacture coverage." *Id.* (internal

28  quotation marks omitted).

**C.  Disputing Underlying Claims Doesn't Prevent Summary Judgment**

Abdou asserts that summary judgment is improper because he "disputes the allegations against him, including the allegations that he failed to present and discuss *other* forms of life insurance," so "there remains a possibility that there will be no finding of liability in the *Mercola* Action, or that there will be a finding of liability that is unrelated to a premium-financed product." (Docket no. 30 at 17.)  But, as discussed above, all of Mercola's claims arise out of the sale of premium financed life insurance—even the claims where the phrase premium finance isn't used.  Under the terms of the policy, the inquiry ends there.  It doesn't matter whether Abdou denies liability for the allegations asserted against him.

**D.  Abdou's Claim That He Didn't Receive a Copy of the Policy Doesn't Prevent Entry of Summary Judgment**

Abdou's opposition suggests that he wasn't provided a copy of his insurance policy or that the premium finance and premium payment guaranty exclusions were added to his policy without sufficient notice. (Docket no. 30 at 19–22; Docket no. 30-4 at ¶¶ 9–11.)  Thus, he contends that issues of fact remain regarding whether Columbia provided conspicuous, plain, and clear notice of the exclusions.  (Docket no. 30 at 19-22.)

To support its contention that Abdou received the policy, Columbia provides a declaration from Joshua Wels—the insurance broker that provided the insurance policy underlying this lawsuit. (Docket no. 24-4.)  He explains that, to enroll for coverage, an agent must acknowledge receipt and review of the policy.  (*Id.* at ¶ 4.)  He explains that enrolling agents receive the policy exclusions through the online process, and that renewing agents, including Abdou, receive the exclusions through the mail.  (*Id.* at ¶ 5.)  He also provides a screenshot of the online enrollment page, where enrolling agents are required to input their first name, last name, email, member ID, and birth date.  (*Id.* at ¶ 6 and Exhibit B.)  The enrollment page includes links to the policy, and requires enrolling agents to acknowledge that they've reviewed it.  (*Id.*)  Wels explains that Abdou used this page to enroll.  (*Id.*)  He also provides a receipt e-mailed to Abdou from his May 5, 2014 enrollment.  (*Id.* at ¶ 7 and Exhibit C.)  The receipt includes links to the policy, and required Abdou to acknowledge that

1   he had reviewed it. (*Id.*)  Abdou denies that he "was never provided a copy of" the policy or

2   its exclusions. (Docket no. 30-4 at ¶¶ 9–11.)  He doesn't, however, deny or even address

3   the provisions of Wels' declaration that deal with the enrollment page, the e-mail sent to him,

4   or the policy receipt. (*Id.*)

5           Abdou's bare bones, self-serving declaration is not enough to prevent entry of

6   summary judgment.  Columbia has provided specific evidence regarding how policies and

7   exclusions are provided to enrolling agents, and how enrolling agents acknowledge that they

8   received and reviewed them.  Columbia has also provided evidence of an individualized e-

9   mail sent to Abdou, which shows that Abdou acknowledged that he received and reviewed

10  the policy.  In response, Abdou issues only an undetailed denial.  Abdou doesn't explain

11  what he reviewed to make sure the insurance product he purchased was the one he wanted.

12  He doesn't deny that he used the online enrollment page or that he received the e-mailed

13  enrollment receipt.  And he doesn't contend that the policy linked to on the enrollment screen

14  and in the receipt is different from the one that he was actually provided.  While a self-

15  serving affidavit can be sufficient to prevent entry of summary judgment, a "conclusory,

16  self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to

17  create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n. 2 (9th

18  Cir. 2007) (quotation omitted).  At best, Abdou's declaration suggests that he didn't read the

19  policy, but "[i]t is a general rule that the receipt of a policy and its acceptance by the insured

20  without an objection binds the insured as well as the insurer and *he cannot thereafter*

21  *complain that he did not read it or know its terms*."  *Mission Viejo Emergency Med.*

22  *Associates v. Beta Healthcare Grp.*, 197 Cal. App. 4th 1146, 1155 (2011) (internal quotation

23  marks omitted).

24                    **E.    Discovery Won't Change the Result**

25          Abdou seeks denial or continuance of summary judgment under Rule 56(d) of the

26  Federal Rules of Civil Procedure.  (Docket no. 30-3.)  Under that rule, "[i]f a nonmovant

27  shows by affidavit or declaration that, for specified reasons, it cannot present facts essential

28  to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow

1   time to obtain affidavits or declarations or to take discovery; or (3) issue any other

2   appropriate order."  Rule 56(d) relief isn't automatic; "'when the movant has met the initial

3   burden required for the granting of a summary judgment, the opposing party either must

4   establish a genuine issue for trial under Rule 56(e) or explain why he cannot yet do so under

5   Rule 56(f).'"  *Tatum v. City & Cty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006)

6   (quoting 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and

7   Procedure § 2740 (3d ed.1998)).

8        Abdou's attorney declares that he needs discovery, including production of

9   Columbia's underwriting file, production of "all files and documents from the file of

10  CalSurance," production of "all files and documents from the file of Columbia kept in the

11  normal course of business," written discovery, and several depositions.  (Docket no. 30-3 at

12  ¶¶ 8–30.)  He claims this discovery will show that the premium finance and premium

13  payment guaranty exclusions weren't in the original policy, Abdou never received a copy of

14  the policy, facts exist to refute declarations that Columbia submitted, and Columbia never

15  disclosed changes to coverage that it has made.  (*Id.*)  But, like in *Tatum*, Abdou's "request

16  for a continuance did not identify the specific facts that further discovery would have

17  revealed or explain why those facts would have precluded summary judgment."  441 F.3d

18  at 1100.  Abdou simply assumes, without explaining, that something helpful to him might

19  come from more discovery.  That's not enough.

20       Columbia's motion for summary judgment (Docket no. 24) is **GRANTED**.

21  **V.     Conclusion**

22       Abdou's motion to dismiss (Docket no. 11) and to stay this case (Docket no. 37) are

23  **DENIED**.  Columbia's motion for summary judgment (Docket no. 24) is **GRANTED**.

24       **IT IS SO ORDERED**.

25  DATED:  December 16, 2015

26

27  **HONORABLE LARRY ALAN BURNS**
    United States District Judge

28